UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

MEGAN E. BICK

                                        Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    14-CV-791S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

───────────────────────────────────

        1.      Plaintiff Megan E. Bick challenges an Administrative Law Judge's ("ALJ")

determination that she is not disabled within the meaning of the Social Security Act ("the Act").

Plaintiff filed an application for Supplemental Security Income (SSI) benefits on September 20,

2011, alleging she has been disabled since January 1, 2011 (amended to March 25, 2009) due

to mental impairments, including depression and anxiety, asthma, carpal tunnel syndrome, and

hip malfunction.   Her application was initially denied.   Pursuant to Plaintiff's request, an

administrative hearing was held before ALJ Connor O'Brien on January 30, 2013, at which

Plaintiff, who is represented by counsel, and a vocational expert testified.   On July 1, 2013, the

ALJ issued a decision denying the claim.   On July 31, 2014, the Appeals Council denied

Plaintiff's request for review.[1]   Plaintiff filed the current action on September 19, 2014,

challenging the Commissioner's final decision.

        2.      On February 20, 2015, Plaintiff filed a motion for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 10).   On April 20,

2015, the Commissioner filed a Motion for Judgment on the Pleadings and in Response to

───────────────────

[1] The ALJ's July 1, 2013 decision became the Commissioner's final decision in this case when the Appeals
Council denied Plaintiff's request for review.

Plaintiff's Brief. (Docket No. 12).   Plaintiff filed a reply on May 12, 2015 (Docket No. 13), at which time this Court took the matter under advisement without oral argument.   For the following reasons, Defendant's motion is denied and Plaintiff's motion is granted.

3.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.   See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.   See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   Substantial evidence is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.   See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

4.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."   Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."   Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).   In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own

judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health and Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

5.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

6.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); <u>see also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 404.1520; 416.920.

7.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering her physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f); 416.920(f); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

8.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the date of her application (R. 15)[2]; (2) Plaintiff's bipolar disorder, panic disorder with agoraphobia, major depressive disorder, obsessive-compulsive disorder, and asthma are "severe" impairments within the meaning of the Act (id.); (3) Plaintiff's impairments do not meet or equal the criteria necessary for finding a disabling impairment under the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 16),[3] with special consideration given to Listings 12.04 (affective disorders) and 12.06 (anxiety disorders); (4) Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, but can tolerate only occasional exposure to extreme cold, extreme heat, wetness, humidity, air borne irritants, and hazards; she is limited to unskilled work with a Dictionary of Occupation Titles ("DOT") reasoning level of two (common sense understanding to complete detailed but uninvolved oral and written instructions); she is precluded from discretionary judgment or decision-making; requires a steady predictable work pace and consistent environment with no changes in the work setting; she cannot perform at hourly production rates, but is capable of

---

[2] Citations to the administrative record are designated as "R."

[3] The ALJ considered Plaintiff's mental impairments according to the "special technique" set forth in 20 C.F.R. § 416.920a and found that Plaintiff's mental impairments caused mild restriction in her activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and that she had experienced no episodes of decompensation of extended duration.  In addition, the ALJ found that Plaintiff failed to establish the presence of "Paragraph C" criteria.  (R. 17).

work involving meeting daily goals; Plaintiff may not interact with the public, but may only occasionally interact with co-workers without teamwork or tandem work; and she requires up to three additional short, less-than-five-minute breaks in addition to regular breaks (R. 17-18); therefore, Plaintiff is unable to perform her past relevant work as a fast food worker (R. 22-23); and (5) Plaintiff could perform other jobs that exist in the national economy, including those of a laundry laborer or industrial cleaner (id.).   Thus, Plaintiff was not under a disability, as defined by the Act, at any time from the date of her application through July 1, 2013, the date of the ALJ's decision.  (R. 24).

9.     Plaintiff argues that remand is required because (i) the ALJ erred when she failed to consider whether Plaintiff's intermittent noncompliance with medication and counseling was a symptom of Plaintiff's mental impairments, (ii) the ALJ failed to give controlling weight to Plaintiff's treating psychiatrist without providing a "good reason," and (iii) the ALJ substituted her own judgment for that of the treating and examining opinions in the record.  While it is not readily apparent that Plaintiff would be found disabled under *de novo* review, in this case, the ALJ discounted Plaintiff's allegations and three opinions that Plaintiff was unable to work, based on Plaintiff's noncompliance with mental health treatment and on a selective, erroneous reading of the record.  Accordingly, for the reasons set forth in this decision, the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record," and unable to undertake a meaningful review of the ALJ's opinion.  Mongeur v. Heckler, 722 F.2d 1033, 1041 (2d Cir. 1983) (quoting Berry, 675 F.2d at 469 ("we would not hesitate to remand the case for further findings or a clearer explanation for the decision").

10.     In this case, the ALJ's opinion was undeniably influenced by Plaintiff's intermittent attendance at therapy and irregular medication use, as well as the belief that

Plaintiff was "better" when she maintained a consistent treatment regimen.  (R. 19).  An ALJ is permitted to "consider plaintiff's noncompliance with treatment as a factor weighing against [her] credibility."  Lee v. Colvin, No. 13-CV-1151-JTC, 2015 WL 3505791, at *6 (W.D.N.Y. June 3, 2015).  Yet, no adverse inference can be drawn without the ALJ first "considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  SSR 96-7p (evaluation of symptoms); Jackson v. Barnhart, 2008 WL 1848624, at *11 (W.D.N.Y. Apr.23, 2008) (finding plaintiff's missed appointments with her counselors and failure to adhere to medication regimen weighed against plaintiff's credibility).  Plaintiff argues that her diagnosed conditions predispose her to treatment noncompliance.  Indeed "[c]ourts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'"  Cornell v. Astrue, No. 7:11-CV-1064 GTS, 2013 WL 286279, at *8 (N.D.N.Y. Jan. 24, 2013) (where ALJ's credibility finding was based on a review of the entire record "any error caused by such consideration of the failure to pursue treatment is harmless") (citation omitted).  In support of this argument, Plaintiff points only to a statement in the RFC assessment completed by her therapist, Ms. Rajk-Winter, that "[Plaintiff] has struggled with attendance and follow-through in the past" and that "she conveys this is due to symptoms." (See R. 384).  This statement, which is not an opinion, merely reiterates Plaintiff's assertion. Moreover, the ALJ considered evidence that Plaintiff understood her providers' treatment recommendations and that she repeatedly acknowledged the efficacy of her prescribed medications.  (R. 17; 19, citing R. 319, 334, 356, 358).  Accordingly, "[t]he fact that the ALJ did not explicitly reference Plaintiff's alleged mental impairments as a cause for noncompliance

does not mean that it was not considered." <u>Weed Covey v. Colvin</u>, 96 F. Supp. 3d 14, 33 (W.D.N.Y. 2015).

11.     Nevertheless, the ALJ's decision clearly indicates an inclination to doubt Plaintiff because of her noncompliance.  Although the Court finds no *per se* error with respect to the ALJ's consideration of Plaintiff's reasons for noncompliance, the ALJ is required to properly consider additional factors in the credibility assessment.  The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight."  SSR 96–7p.

12.     While it is the ALJ's duty "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant," <u>Carroll v. Sec'y of Health and Human Services</u>, 705 F.2d 638, 642 (2d Cir.1983), the Court's independent review of the record reveals that "the ALJ made several errors in assessing the evidence which may have influenced her ultimate finding that [Plaintiff] was not disabled."  <u>Pratts v. Chater</u>, 94 F.3d 34, 38 (2d Cir. 1996).  In discounting Plaintiff's allegations, as well as the treating and examining opinions of record, the ALJ repeatedly relied on several factors, in addition to Plaintiff's noncompliance, which, although specific, were factually misstated or given inflated significance.  <u>See</u> <u>Pierce v. Astrue</u>, 946 F.Supp.2d 296, 309 (W.D.N.Y. 2013) (reversing where, inter alia, "[a]lthough the ALJ ... provided 'specific' reasons for rejecting [the treating source]'s opinion, they were not 'legitimate' inasmuch as they were based on a misinterpretation of the medical record").

13.     For example, the ALJ noted that enrolling in college classes and "successfully completing" a basic math skill class was "inconsistent with marked limitations" in concentration,

persistence or pace.  (R. 17).   In addition, the ALJ found that the RFC was supported by Plaintiff's "own capacity to obtain a GED and to take college classes."  (R. 20).   And in reference to Ms. Rajk-Winter's opinion, the ALJ concludes "has demonstrated the ability to maintain attendance and routine by obtaining a GED and successfully completing a college course during the period at issue."  (R. 22).   First, the Court notes that Plaintiff obtained her GED in 2007, which was four years prior to her application date.  (See R. 20; R. 256).   In addition, Plaintiff indeed enrolled in several community college courses in January 2012, but she subsequently withdrew from all of them, reportedly because of her increased mental health symptoms.  (R. 20; 42).   The record reflects that she completed the three credit basic math skills course, not in 2012, but in 2008, also prior to her application date.  (R. 256).   This evidence is neither from the relevant period, nor does it reasonably translate into a demonstrated ability "to maintain attendance and routine," as asserted by the ALJ.  (R. 22).   Also in support of the RFC, the ALJ notes Plaintiff "has also obtained a GED despote mental limitations and remains capable of maintaining her household with little assistance."  Plaintiff reported caring for her children and home, but also reported significant stress resulting therefrom.  (R. 320; 431).   In fact, Dr. Lambert noted that Plaintiff's serious mood disorder and anxiety disorder symptoms "appear to compromise functioning in numerous areas despite her tendency to push herself to at least function at a bear [sic] minimum regarding childcare for example."  (R. 274).   Thus, the Court finds the activities on which the ALJ relies are "either unsupported by the evidence or were the sort of "minimal daily activities" that the courts have held do not necessarily contradict a claim of disability."  Kane v. Astrue, No. 11-CV-6368 MAT, 2012 WL 4510046, at *18 (W.D.N.Y. Sept. 28, 2012) (citing Balsamo, 142 F.3d at 81).

14. Correspondingly, when assessing the degree of Plaintiff's alleged functional impairments, the ALJ found that Plaintiff's GAF scores "depict improvement with treatment" and "the trend is consistent with the improvement evidenced elsewhere." (R. 19). In particular, the ALJ noted: "[r]emarkably, with more consistent treatment, the claimant's GAF score rose to 55 in January 2013." (R. 19; citing R. 313, 384). Upon review of the record, the Court finds no such "trend." Six GAF scores appear in the record. On four occasions, March 25, 2009 (R. 432), May 11, 2011 (R. 317), November 2, 2011 (R. 263), and January 9, 2013 (R. 384), Plaintiff's GAF was recorded as 50, indicative of "serious symptoms."[4] Two treatment notes indicate that Plaintiff's GAF was higher than 50: a GAF of 55 at a therapy session on April 13, 2011 (R. 313), and the January 9, 2013 note indicates that Plaintiff's current GAF was 50, but her highest GAF for the past year was 53. (R 384). Nevertheless, these scores fall in the range of "moderate symptoms,"[5] and do not necessarily undermine Plaintiff's contentions. See Kane v. Astrue, No. 11-CV-6368 MAT, 2012 WL 4510046, at *17 (W.D.N.Y. Sept. 28, 2012) (A GAF of 51, "on the extreme low end" of the moderate symptom range "hardly counts as compelling evidence that Kane's mental impairments are insignificant."). The consistently assessed "serious symptoms" do not provide substantial evidence to support the ALJ's conclusion that Plaintiff's mental health symptoms improved over time and do not interfere with her ability to work to the extent alleged. See Daniel v. Astrue, No. 10-CV-5397 NGG, 2012 WL 3537019, at *10 (E.D.N.Y. Aug. 14, 2012) (GAF of 55, while relevant, did not contradict opinion that claimant was disabled because a GAF score 'does not have a direct correlation to the

---

[4] A GAF score of 41-50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psych. Assn, Diagnostic and Statistical Manual of Mental Disorders–Text Revision ("DSM–IV–TR"), at 34 (4th ed., rev. 2000).

[5] "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." Id.

severity requirements in [the SSA's] disorders listings.'") (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injuries, 65 Fed.Reg. 50746, 50764–5 (2000).").

15.   Accordingly, "although the ALJ provided 'specific' reasons for discounting Plaintiff's credibility, the Court cannot find that they were 'legitimate' reasons because they are based on a misconstruction of the record." Poles v. Colvin, No. 14-CV-06622 MAT, 2015 WL 6024400, at *6 (W.D.N.Y. Oct. 15, 2015) (citing Pierce, 946 F.Supp.2d at 309).   While no single factual error undermines the entire decision, in the aggregate, the Court finds that the credibility is not supported by substantial evidence. See Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010) ("Because the ALJ's adverse credibility finding, which was crucial to his rejection of [plaintiff]'s claim, was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider 'all of the relevant medical and other evidence.'") (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

16.   Likewise, the Court is unable to conclude whether the ALJ had "good reasons" for discounting the treating and examining opinions. Pierce, 946 F.Supp.2d at 309; See Miller v. Colvin, 122 F. Supp.3d 23, 30-31 (W.D.N.Y. 2015) (ALJ's reasons, which rely on a "selective reading of the record," are not "good reasons" for discounting the medical opinions).   Plaintiff contends that remand is necessary because the ALJ discounted the opinion of Plaintiff's treating psychiatrist, Dr. Hurley, without "good reason," and related to this, also elevated her own opinion above that of Dr. Hurley, therapist Ms. Rajk-Winter, and consultative examiner Dr. Lambert.   It is well-settled that the ALJ must give controlling weight to the opinion of a treating physician if it is well-supported by the medical record and is not inconsistent with other substantial evidence. Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Halloran

v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).   When an ALJ refuses to assign a treating physician's opinion controlling weight, she must consider a number of factors including the length the treatment relationship, evidence in support of opinion, and consistency of the opinion with the record.   20 C.F.R. § 416.927(d)(2) (factors to be considered in weighing all medical opinions).   "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand," Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); Halloran, 362 F.3d at 33.

17.   The ALJ afforded treating psychiatrist Dr. Hurley's opinion "some weight" with regard to the description of Plaintiff's impairments "based on the treating history," but stated that "the opinion is not well-supported by treatment records of the claimant's progress."   (R. 21).   Regarding Dr. Hurley's report dated November 2, 2011, the ALJ stated "[d]espite describing at most moderate restrictions, Dr. Hurley also completed a checkbox form that the claimant was moderately and markedly impaired in various work abilities, including marked impairments in detailed instructions and working in close proximity with others without distractions."   (Id., citing R. 264-265).   The Social Security office found that the report "implies that the patient is unable to work at any job in any capacity, including simple repetitive work in a low contact environment" and asked Dr. Hurley to clarify his conclusions.   (R. 268).   The inquiry further stated:   "If you feel the patient is unable to perform any work at all, please detail the objective findings (or elaborate on those already provided) that leads you to this conclusion."   (R. 268).   To this, Dr. Hurley replied: "Patient with volatile mood, poor concentration and poor energy/sleep rendering her unable to work in competitive setting." (Id.).

Although the ALJ need not accept Dr. Hurley's opinion on the ultimate issue of disability, 20 C.F.R. § 404.1527(d), here, the agency specifically asked Dr. Hurley to clarify his conclusion. In discounting the opinion, the ALJ stated "For instance, Dr. Hurley particularly notes the claimant's sleep difficulties in describing claimant incapable of work. Significantly, however, treatment notes observe improvement in sleep when the claimant has her children on a more definite schedule and when the claimant is consistently compliant with medication." (R. 21, citing R. 333). The Court first notes that the record cited by the ALJ indicates that Plaintiff did not feel rested despite sleeping better, and that she was out of medication at the time. (R. 333). That aside, an ALJ must "*comprehensively* set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33 (emphasis added). Here, other than the misstated record regarding sleep improvement, "the ALJ failed to specify *which* treatment records and clinical findings she believed supported her rejection of the opinion." Beckwith v. Colvin, No. 6:13-CV-01095 MAD, 2015 WL 799865, at *11 (N.D.N.Y. Feb. 25, 2015) ("[T]he Court cannot glean from the record the contradiction within the "treatment records and clinical findings" to which the ALJ is referring.") (citing Id.); see Wagner v. Secretary of Health and Human Servs., 906 F.2d 856, 862 (2d Cir. 1990) (explaining that while a physician's opinion might contain inconsistencies and be subject to attack, "a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion"); see also Rosa v. Callahan, 168 F.3d 72, 78–79 (2d Cir.1999) ("ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). The ALJ's lack of clarity regarding the source of inconsistencies fails to satisfy the treating physician rule here, particularly because the other regulatory factors do not support giving limited weight to Dr. Hurley's opinion. Dr. Hurley

specializes in psychiatry, noted a treating relationship with Plaintiff since March 2009, regularly treated Plaintiff during the relevant time period, and offered an opinion that was generally consistent with that of Plaintiff's therapist and the consultative examiner.  See 20 C.F.R. § 404.1527(c).

18.    In addition, the ALJ failed to give good reasons for giving "only some weight" to the opinion of consultative psychologist Dr. Lambert.  (R. 21); see id. ("Unless we give a treating source's opinion controlling weight . . . , we consider all of the [] factors in deciding the weight we give to any medical opinion.").  Dr. Lambert concluded that: "The results of the present evaluation appear consistent with psychiatric problems, and these may significantly interfere with the claimant's ability to function on a daily basis."  (R. 273).  First, the ALJ notes that Dr. Lambert's opinion was inconsistent with her examination reports.  (R. 21).  While a valid reason for not accepting a medical opinion on the ultimate issue of disability, the medical source, not the ALJ, is in the position to draw conclusions from her findings.  "[I]n the context of a psychiatric evaluation, an opinion based on personal examination is inherently more reliable than an opinion based on a cold record because observation of the patient is critical to understanding the subjective nature of the patient's disease and in making a reasoned diagnosis."  Westphal v. Eastman Kodak Co., No. 05–CV–6120, 2006 WL 1720380, at *5 (W.D.N.Y. June 21, 2006).

The ALJ discounted Dr. Lambert's opinion because it was based on a single examination, noting that "[h]ere, assessment over time is significant because the record demonstrates frequent periods of noncompliance with treatment recommendations and attendant changes in symptoms and condition."  (R. 21).  Although length of treatment relationship is indeed relevant, here Dr. Lambert's opinion was consistent with the findings of

Dr. Hurley and Ms. Rajk-Winter, who did have long term treating relationships with Plaintiff. Moreover, the ALJ concluded that this visit occurred during a period of noncompliance, indicating that Dr. Lambert had a snapshot only of Plaintiff's untreated symptoms, while also finding it reflected negatively on Plaintiff's veracity because she "did not report noncompliance to the examiner." (Id.).  This finding, however, is not reasonably supported by the record, as Dr. Lambert recorded that "current medications are reported and shown to the examiner."  (R. 270).  Furthermore, the statement on which the ALJ relied, that Plaintiff reported being out of medication in early January (one month after this appointment), in fact, indicated she had been out of medication for "one week."  (R. 338).

The ALJ also found that Dr. Lambert's opinion "neither reflects the claimant's allegations nor the evidence of record that claimant's symptoms increased with complex and stressful situations, interactions with others, and noncompliance with medication."  (R. 22).  Further, the ALJ stated that "[w]hile the record describes the claimant as significantly limited in social interactions, [she] is consistently described as cooperative and relating well with treating and examining sources."  (Id.).  First, Dr. Lambert recorded that Plaintiff demonstrated discomfort, in that she reported getting hives when she is anxious and "these were clearly detectible during the interview."  (R 270).  Moreover, Plaintiff's "ability to interact with [her] therapists in a collaborative environment is not predictive of [her] ability to interact with superiors and co-workers in a competitive employment setting, or to respond appropriately to the stresses and demands of the workplace."  Kane v. Astrue, No. 11-CV-6368 MAT, 2012 WL 4510046, at *17 (W.D.N.Y. Sept. 28, 2012) (citing Hodes v. Apfel, 61 F.Supp.2d 798, 806 (N.D.Ill. 1999) (A court "cannot uphold [the ALJ's decision] if 'the reasons given by the trier of fact do not build

an accurate and logical bridge between the evidence and the result.'") (quoting <u>Sarchet v. Chater</u>, 78 F.3d 305, 307 (7th 1996))).

19.    The record also contains therapy notes and a functional questionnaire from Ms. Rajk-Winter, who provided therapy at various intervals since November of 2001, and throughout the relevant period.    She opined that Plaintiff "would not be able to meet competitive standards in many work related tasks."  (R. 22, citing 386-387).   Though not a medical source, Ms. Rajk-Winter's treatment notes and functional assessment are "evidence from other sources to show the severity of [Plaintiff's] impairment and how it affects [her] ability to work." 20 C.F.R. § 416.913(d).   An ALJ must consider such evidence and explain how it was weighed.  SSR 06-3p (noting that ALJs "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case").   In giving "little weight" to Ms. Rajk-Winter's opinion, the ALJ noted that "[d]espite opining the [Plaintiff] would not be able to meet competitive standards in many work related tasks …Ms. Rajk-Winter indicated the [Plaintiff] has seen progress with consistent treatment and medication."  (R. 22, citing 384).  That portion of the form, however, is forward looking and states "Prognosis: some progress with continuous treatment and medication."  (R. 384).  This statement is simply too vague to constitute substantial evidence in favor of the finding that the Plaintiff could perform the demands of full-time work if she would simply comply with her treatment recommendations. The ALJ also discounted this opinion based on general statements regarding Plaintiff's "significant improvement with regular care," that it is "not well-supported by mental health treatment notes for the period at issue," and "is at odds with the claimant's accomplishments."

Furthermore, the ALJ again relied on Plaintiff's GED and college math course, and the same vague assertion that Plaintiff's "functioning notably improves with adherence to treatment recommendations."  (R. 22).

20.    As with the credibility finding, the ALJ's reasons for discounting these opinions are not "legitimate" in that they rely on misstated facts and vague references to the record. Additionally, the three opinions that indicated Plaintiff could not work were generally consistent with each other, and none indicated whether Plaintiff's condition would improve enough to permit her to work if she maintained a regular treatment regimen.  Accordingly, the ALJ failed to provide "good reasons" throughout the decision, implicating both the credibility finding and the treatment of the medical opinions.  Taylor v. Barnhart, 117 F. App'x 139, 141 (2d Cir. 2004) ("The lack of support for the ALJ's credibility assessment is significant not only in itself, [ ] but also because it appears that the ALJ's assessment of Taylor's credibility, particularly with respect to reports of back pain, may have substantially affected the weight given by the ALJ to Dr. Hecht's opinion, and hence the ultimate determination of the extent of Taylor's disability.") (citation omitted).

21.    After carefully examining the administrative record, and for the foregoing reasons, this Court finds that remand is necessary for further consideration of the record.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order

FURTHER, that the Clerk of Court is directed to close this case.


SO ORDERED.


Dated:  July 25, 2016
            Buffalo, New York


                                                    /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge